IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 95 CR 730-1 |
| | ) | |
| NATHAN HILL, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 1999, Nathan Hill was sentenced to life imprisonment after he was convicted of, among other things, narcotics conspiracy and continuing criminal enterprise. Mr. Hill has now filed a motion for compassionate release—his fourth—under 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Court denies the motion.

### Background

The evidence at trial—which was conducted before another judge of this court—showed that from 1987 to 1995, Mr. Hill ran a highly profitable and highly organized wholesale narcotics distribution in the Chicago area. He was twenty-one when the drug conspiracy began. By age twenty-nine, he amassed over $10 million in narcotics proceeds.

In December 1995, a grand jury indicted Mr. Hill and twenty co-defendants. Mr. Hill fled the United States, seeking refuge in Mexico, the Bahamas, and West Africa. He was ultimately extradited from West Africa and faced trial in 1999.

Relevant to this motion, a jury convicted Mr. Hill of conspiracy to distribute

cocaine and engaging in a continuing criminal enterprise. The continuing criminal enterprise offense mandated a sentence of twenty years to life imprisonment. 21 U.S.C. § 848(a). This conviction required a mandatory life sentence, however, if the defendant was (1) a "principal administrator, organizer, or leader of the enterprise" and (2) the violation involved (a) "at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)," i.e., 150 kilograms of powdered cocaine; or (b) resulted in "$10 million in gross receipts during any twelve-month period." Id. § 848(b). At the time, a sentencing judge was allowed to make these determinations by a preponderance of the evidence.

Judge Charles Kocoras, the sentencing judge, found that Mr. Hill was the leader of a narcotics enterprise, that he trafficked over 4,000 kilograms of cocaine, and that he had earned $10 million in a twelve-month period. These findings alone required a mandatory minimum life sentence.

Still, Judge Kocoras alternatively calculated the sentence Mr. Hill would have received under the sentencing guidelines for narcotics conspiracy and continuing criminal enterprise. These convictions are generally assessed under the guidelines as narcotics offenses. See U.S.S.G. § 2D1.1. But the narcotics-offense guidelines contain a cross reference that requires the offenses to be assessed under the first degree murder guideline if "a victim was killed under circumstances that would constitute murder." Id. § 2D1.1(d)(1).

Although not found by the jury, Judge Kocoras concluded there was "substantial evidence" that Mr. Hill was involved in "at least two murders." See Tr. of Proceedings—Sentencing at 135. Judge Kocoras thus calculated Mr. Hill's sentence under the first

2

degree murder guideline, which mandated a base offense level of 43. *See* U.S.S.G. § 2A1.1. He further concluded that Mr. Hill's leadership of his narcotics enterprise warranted a four-point leadership-role enhancement and that his flight from prosecution justified a two-point enhancement for obstruction of justice. *See id.* §§ 3B1.1(a), 3C1.1. With these enhancements, Mr. Hill's total offense level was 49. At the time, sentencing within the guidelines range was mandatory. The guidelines' sentencing table, which goes no higher than offense level 43, mandated a life sentence for any person at that level, irrespective of the person's criminal history category. Based on this calculation and his findings concerning the continuing criminal enterprise, Judge Kocoras sentenced Mr. Hill to life imprisonment.

Finally, after Judge Kocoras made these findings, the government moved to vacate the narcotics conspiracy conviction as a lesser included offense of continuing criminal enterprise. *Cf. Rutledge v. United States*, 517 U.S. 292, 300 (1996). Judge Kocoras granted the motion.

Mr. Hill's direct appeal was unsuccessful. *See United States v. Hill*, 252 F.3d 919 (7th Cir. 2001); *Hill v. United States*, 536 U.S. 962 (2002) (mem.). His later postconviction motions under 28 U.S.C. § 2255 were also denied. *See United States v. Hill*, No. 03 C 4196, 2004 WL 2064622 (N.D. Ill. Sept. 13, 2004).

In January 2021, Mr. Hill first moved for compassionate release; the case at that point was reassigned to the undersigned judge. He argued that he should be released from his life sentence based on (a) health threats from the COVID-19 pandemic, (b) rehabilitation, and (c) nonretroactive changes in sentencing law that now prevent sentencing judges from finding facts that increase mandatory minimum sentences. The

Court determined that, under controlling Seventh Circuit precedent, Mr. Hill had not established an extraordinary and compelling reason warranting compassionate release.

Mr. Hill subsequently moved for reconsideration, which the Court denied. He then filed a second and third motion for compassionate release; the Court denied both for failing to raise new issues.

On April 22, 2024, Mr. Hill filed the present motion for compassionate release. He seeks a reduction in his sentence to time served or, in the alternative, 360 months of imprisonment. He argues several circumstances justify this reduction, including: a gross sentencing disparity in light of changes in the law, sentencing error, his youth at the time of the offense, harsh conditions caused by the COVID-19 pandemic, medical issues, and rehabilitation.

## Discussion

A federal prisoner may bring a motion for compassionate release after exhausting the administrative remedies provided by the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The government does not dispute that Mr. Hill has exhausted these remedies.

The Seventh Circuit has described a two-step process for evaluating a prisoner's motion for compassionate release. First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.*

"[T]he movant bears the burden of establishing extraordinary and compelling

4

reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). When determining whether a prisoner has raised an extraordinary and compelling reason, a court should consider all the reasons raised "[i]ndividually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Even if a reason on its own is "insufficient to meet the threshold," the collective effect of all the reasons raised may be extraordinary and compelling. *Id.*

### A. Sentencing Commission policy statements

Congress has delegated to the Sentencing Commission the power to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The only statutory limit Congress imposed on this power is that "[r]ehabilitation of the defendant alone" may not be an extraordinary and compelling reason. *Id.*

On November 1, 2023, the Sentencing Commission's most recent policy statement amendments went into effect. Four sections further describing what constitutes an extraordinary and compelling reason are relevant to Mr. Hill's motion:

> a. *Medical Circumstances of the Defendant.*— . . . The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

*Id.* § 1B1.13(b)(1)(C).

> b. *Other Reasons.*—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

*Id.* § 1B1.13(b)(5).

5

    c.    *Unusually Long Sentence.*—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

    d.    *Rehabilitation of the Defendant.*— . . . [R]ehabiliation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether . . . a reduction in the defendant's term of imprisonment is warranted.

*Id.* § 1B1.13(d).

**B.**    **Extraordinary and compelling reasons**

    **1.**    **Gross sentencing disparity**

First, Mr. Hill argues that changes in sentencing law create a gross disparity between his sentence and the sentence he would receive today. During Mr. Hill's sentencing, the judge alone found the facts required to make his continuing criminal enterprise conviction a mandatory life sentence. A little over a decade later, the Supreme Court held in *Alleyne v. United States*, 570 U.S. 99 (2013), that the Sixth Amendment requires facts that increase a mandatory minimum to be found by the jury beyond a reasonable doubt. *Id.* at 103.

Mr. Hill does not claim that his sentence is invalid based on *Alleyne*. Nor could he, as *Alleyne* became law after his direct review ended. Only retroactive legal changes can be used to invalidate a sentence once direct review has concluded, and the Seventh Circuit has held that *Alleyne* does not apply retroactively. *See Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015).

Instead, Mr. Hill argues that the gross disparity caused by this change may be considered an extraordinary and compelling reason for compassionate release under the Sentencing Commission's policy statement. See U.S.S.G. § 1B1.13(b)(6). Binding precedent, however, has closed off this avenue for relief as well. The Seventh Circuit has held that nonretroactive changes in sentencing law cannot be considered an extraordinary and compelling reason. United States v. King, 40 F.4th 594, 595 (7th Cir. 2022).

This precedent remains binding even in the face of conflicting Sentencing Commission policy statements. In United States v. Black, --- F.4th ---, 2025 WL 758201 (7th Cir. Mar. 11, 2025), the Seventh Circuit considered whether the Sentencing Commission's policy statements could make a nonretroactive change—the First Step Act's anti-stacking amendment regarding 18 U.S.C. § 924(c)—an extraordinary and compelling reason for compassionate release despite past precedent holding otherwise. Id. at *3. The court held that its precedent "remain[ed] binding law." Id. at *1. The court recognized that "Congress explicitly delegated to the Commission authority to interpret extraordinary and compelling" under the compassionate release statute. Id. at *3. It further understood that the policy statements "directly contradict[] [its] holding." Id. at *2. Still, the court concluded that its "interpretation of extraordinary and compelling prevails over the Commission's because the Commission exceeded its statutory authority." Id. *2–3.

Much of the Seventh Circuit's reasoning for why the Commission exceeded its authority is based on Congress's explicit choice to make the anti-stacking amendment nonretroactive. See id. at *4. In the court's view, this choice prevented the Commission

7

from having the power to define the anti-stacking amendment as an extraordinary and compelling reason, as that would "make[] the amendment retroactive" and "violate the First Step Act."  *Id.*  Because this interpretation "conflict[ed] with a federal statute," the court concluded, the Commission exceeded its interpretative scope, and Seventh Circuit precedent prevailed.  *Id.*

Read narrowly, *Black*'s holding may be specific to situations where the Commission conflicts with Congress's intent to make a statute nonretroactive.  That is not what is at issue here; *Alleyne* and the decision not to make it applicable retroactively were judicial decisions, not legislative decisions.  Yet other parts of *Black* have broader implications.  The Seventh Circuit stated that its past interpretations of extraordinary and compelling were not "temporary answer[s]" waiting for Commission guidance.  *Id.* at *4.  Rather, the court said, its precedents "directly interpreted" the compassionate release statute and remain binding:  "Our interpretation of extraordinary and compelling in the governing compassionate release statute . . . is lasting, not temporary."  *Id.*

As the Court has indicated, in Mr. Hill's case there is no statutory bar on retroactivity that pose a conflict with the Commission's policy statements.  Rather, any conflict would be with judicial precedent.  Still, the Court cannot ignore the Seventh Circuit's past interpretations of what constitutes an extraordinary and compelling reason, especially after *Black*.[1]  Without a clearer statement otherwise, the Court must abide by

---

[1] Further supporting applying past Seventh Circuit precedent is that Judge Kenneth Ripple, the deciding vote in *Black*, concurred "in the judgment and opinion of the court" based on "the doctrines of stare decisis and precedent."  *Black*, 2025 WL 758201, at *5 (Ripple, J., concurring).  *But see United States v. Sanders*, No. 24-2763, 2025 WL 826869 (7th Cir. Mar. 17, 2025) (per curiam) (concluding it "need not address the effect of *Black*" on defendant's contention that nonretroactive judicial changes in the law are

the Seventh Circuit's prior holding that nonretroactive changes in the law, statutory or judicial, are not an extraordinary and compelling reason for a sentence reduction.

Finally, even if the Court were to interpret *Black* narrowly, Mr. Hill has not established that the Sentencing Commission's policy statement concerning unusually long sentences applies in his case. Under this policy statement, a change in the law is an extraordinary and compelling reason only if the change creates a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

As discussed above, Judge Kocoras sentenced Mr. Hill to life imprisonment. If calculated today—and setting aside the sentencing judge's findings of murder—the advisory sentence under the guidelines would still be life imprisonment. Continuing criminal enterprise is a narcotics offense, so Mr. Hill's sentencing range would be calculated under U.S.S.G. § 2D1.1. He would start at a base offense level of 38 because the underlying narcotics conspiracy involved 450 kilograms or more of cocaine. *See* U.S.S.G. § 2D1.1(c)(1). He would then receive a four-point enhancement due to his continuing criminal enterprise conviction. *See id.* § 2D1.5(a)(1) (requiring a four-point increase in the offense level for a continuing criminal enterprise conviction if the increase would result in a level greater than 38). Finally, he would also receive a two-point obstruction of justice enhancement, increasing his offense level to 44. *See id.* § 3C1.1. The guidelines, which top out at offense level 43, would still recommend a life sentence.

---

an extraordinary and compelling reason, as the district court did not abuse its discretion in finding the defendant had not shown a gross disparity in sentences).

It is true that, if sentenced today, this guidelines calculation would be an advisory recommendation from which a judge could deviate. *See United States v. Booker*, 543 U.S. 220, 245 (2005) (Opinion of Breyer, J., for the Court). But Mr. Hill's burden of showing an extraordinary and compelling reason is not satisfied by merely proving a judge *could* give him a lower sentence if the sentencing were being redone today. Rather, he must show that changes in the law have created a "gross disparity" between his current sentence and the sentence "likely to be imposed" at the time of the motion. U.S.S.G. § 1B1.13(b)(6). Although Mr. Hill would not be subject to a mandatory life sentence today, he has not shown that it is likely that a lesser sentence would be imposed, let alone one that would create the gross disparity required to give rise to an extraordinary and compelling reason warranting a sentence reduction.

Mr. Hill's response to this is that calculating his offense level requires facts only available in the presentence report and not found by the original sentencing judge. Even if the Court were to accept that, in calculating Mr. Hill's hypothetical sentence today, it was bound by facts found in the original sentencing, his premise is incorrect. Every fact required to make the offense level calculation was found by the judge during sentencing. *See* Tr. of Proceedings—Sentencing at 119 (finding Mr. Hill's narcotics conspiracy involved at least 4,000 kilograms of cocaine); *id.* at 115 (finding the two-point obstruction enhancement due to Mr. Hill's "flight, his use of identities, his threats and intimidation and his use of physical violence").

Mr. Hill's other disparity arguments are unavailing. He contends that his sentence is disparate when compared to his co-defendants, as only he and one other co-defendant received a life sentence. Yet Mr. Hill was not similarly situated to the

other co-defendants—he was the leader and organizer of his narcotics enterprise. One would expect the head of a criminal enterprise to receive a more severe sentence then his co-defendant subordinates.

Lastly, Mr. Hill argues that his sentence is nationally disparate. He emphasizes that his life sentence for a narcotics offense is harsher than the average murder conviction. He further buttresses this argument by highlighting that continuing criminal enterprise charges disproportionately effect minority groups.

But Mr. Hill is not the average defendant. The sentencing judge found Mr. Hill trafficked 4,000 kilograms of cocaine, a quantity that is *eight times* larger than the amount required to receive the highest base offense level for narcotics conspiracy. *See* U.S.S.G. § 2D1.1(c)(1). The judge also concluded that there was "substantial evidence" that Mr. Hill was involved in "at least two murders, one attempted murder and probably more." *See* Tr. of Proceedings—Sentencing at 135. Although a sentencing judge may not now find facts that increase the penalty for a crime, it is black letter law that a judge should consider the "life and characteristics" of a defendant during sentencing. *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); *Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."); *see also* 18 U.S.C. § 3553(a)(1) (requiring judges to consider the "nature and circumstances of the offense and the history and characteristics of the defendant" when sentencing). Considering all the aspects of Mr. Hill's offense, related conduct, and his

background, his life sentence is not nationally disparate such that it gives rise to an extraordinary and compelling reason for a sentence reduction.

### 2. Sentencing error

Second, Mr. Hill argues the sentencing court erred in allowing the government to vacate the lesser narcotics conspiracy conviction in favor of the continuing criminal enterprise conviction. Even assuming there was sentencing error, binding precedent forecloses this argument. The Seventh Circuit has held that "a claim of errors in the original sentencing is not itself an extraordinary and compelling reason for release." *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021). Allowing claims of error to be asserted as grounds for compassionate release "would circumvent the normal process for challenging potential sentencing errors, either through the direct appeal process or collaterally through a 28 U.S.C. § 2255 motion." *Id.*

Mr. Hill attempts to sidestep this precedent by arguing that sentencing errors may be considered under the Sentencing Commission's "other reasons" policy statement. *See* U.S.S.G. § 1B1.13(d). The Seventh Circuit has rejected this approach as well. *United States v. Colon*, No. 24-119, 2024 WL 3983324, at *1 (7th Cir. Aug. 29, 2024) (per curiam) (rejecting a defendant's attempt to argue that an "alleged error in his sentence" was an extraordinary and compelling "other circumstance" as it conflicted with "precedent prohibiting the review of sentencing challenges brought under the compassionate-release statute").

The Court also notes that Mr. Hill's sentence likely would be the same under the vacated narcotics conspiracy conviction. His offense level calculation would start at a base offense level of 38 because the narcotics conspiracy involved 450 kilograms or

12

more of cocaine. *See* U.S.S.G. § 2D1.1(c)(1); Tr. of Proceedings—Sentencing at 119. He would then receive a four-point enhancement for his leadership role. *See* U.S.S.G. § 3B1.1(a); Tr. of Proceedings—Sentencing at 120 ("There is not any question, based on this evidence, that Mr. Hill was not only the leader and organizer, but that this enterprise had a considerable number of people."). He would also again receive a two-point obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1; Tr. of Proceedings—Sentencing at 115. These enhancements place Mr. Hill at an offense level of 44, which, again, results in an advisory sentence of life imprisonment. Therefore, the alleged sentencing error cannot be considered an extraordinary and compelling reason for a sentence reduction.

    3.    **Youth**

Third, Mr. Hill contends that his youth at the time of the offense is an extraordinary and compelling reason. Although Mr. Hill was only twenty-one when the narcotics conspiracy began, he continued not just his involvement but his leadership of the conspiracy until he was indicted at twenty-nine. Courts consider youth in sentencing because youth is infected by "unfortunate yet transient immaturity." *Cf. Hauschild v. Harrington*, 732 F. Supp. 3d 839, 854 (N.D. Ill. 2024) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). But Mr. Hill's leadership of a highly organized wholesale narcotics distribution evinces sophistication—it belies an inference that immaturity motivated or mitigated his actions. *See, e.g., United States v. Chavez*, No. 08 CR 746-5, 2024 WL 2209592, at *3 (N.D. Ill. May 16, 2024) (concluding that a defendant's youth was not an extraordinary and compelling reason for sentence reduction when the defendant "held a leadership position in an organized criminal enterprise, gave orders to

13

subordinates, and engaged in activities that reflected deliberation and calculation"). Mr. Hill's youth is not an extraordinary and compelling reason warranting a sentence reduction.

### 4. COVID-19 conditions

Fourth, Mr. Hill argues the harsh confinement he suffered during the COVID-19 pandemic is an extraordinary and compelling reason. He is careful not to argue that COVID-19 is a current health risk, as that argument is foreclosed by Seventh Circuit precedent. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) ("[P]risoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release."). Instead, Mr. Hill contends that his sentence would have been lower had the sentencing judge known of the harsher conditions he would later face during the COVID-19 pandemic.

Mr. Hill has not shown that knowledge of these harsh conditions would have led to a lower sentence. As the Court stated in its first order denying compassionate release, harsher conditions during the pandemic do "not constitute an 'extraordinary' ground justifying a sentence reduction under the compassionate release statute—at least not one of more than, perhaps, a few months (e.g., for a prisoner nearing his anticipated release date)." Ord. on Def.'s Mot. for Compassionate Release at 3–4. In sum, Mr. Hill has not shown his confinement during the COVID-19 pandemic is an extraordinary and compelling reason for a sentence reduction.

### 5. Medical circumstances

Mr. Hill also argues that he suffers from several medical ailments. As stated earlier, the Sentencing Commission has concluded that the medical circumstances of a

14

defendant can serve as an extraordinary and compelling reason.  *See* U.S.S.G. § 1B1.13(b)(1).  Relevant to this case, the medical circumstances must require care that is "not being provided and without which the defendant is at risk of serious deterioration in health or death."  *Id.* § 1B1.13(b)(1)(C).

Though Mr. Hill cites many ailments, he does not show a lack of care for them.  The medical records to the Court provided show that he is being counseled on his nutrition, he is prescribed medication for hypertension, and there is no clear evidence of dangerously high cholesterol, prediabetes, low white blood cells, or glaucoma.  Mr. Hill does not respond to these records, nor does he mention his medical circumstances in his reply brief.  He has not shown that his medical circumstances are an extraordinary and compelling reason for a sentence reduction.

6.      **Rehabilitation**

Next, Mr. Hill argues that he is fully rehabilitated.  The government does not dispute that Mr. Hill has taken immense rehabilitative steps.  He has undergone therapeutic treatment and completed the Challenge program, which places emphasis on violence prevention.  He is now a mentor in that same program, where he helps younger inmates overcome their own challenges.  Letters from inmates show that Mr. Hill has both improved himself and the lives of others.  This is, without question, commendable on Mr. Hill's part.

Still, rehabilitation alone is not an extraordinary and compelling reason that permits a sentence reduction.  28 U.S.C. § 994(t).  The Court may consider rehabilitation but cannot grant a compassionate release motion unless it is coupled with some other extraordinary and compelling reason.  *United States v. Peoples*, 41 F.4th

837, 842 (7th Cir. 2022); see also U.S.S.G. § 1B1.13(d). Mr. Hill's efforts are commendable, but they "cannot serve as a stand-alone reason" for a sentence reduction. *Peoples*, 41 F.4th at 842 (quoting *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021)).

### 7. Totality of reasons

Finally, the Court considers whether the grounds raised—although individually insufficient—constitute an extraordinary and compelling reason when considered together. *See Vaughn*, 62 F.4th at 1073. They do not. As discussed above, many of Mr. Hill's grounds are not just insufficient individually—they cannot be considered extraordinary and compelling reasons at all. When everything is added up, the only basis that Mr. Hill offers that might contribute to a finding that his circumstances are extraordinary and compelling is his rehabilitation. But that alone cannot be an extraordinary and compelling reason. *Peoples*, 41 F.4th at 842. Mr. Hill has not provided extraordinary and compelling reasons, even in conjunction, that warrant a sentence reduction.

## Conclusion

For these reasons, the Court denies Mr. Hill's motion for compassionate release [dkt. no. 1593].

Date: March 19, 2025

_____
MATTHEW F. KENNELLY
United States District Judge