**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 95 CR 730-1** |
| | ) | |
| **NATHAN HILL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

In 1999, another judge of this court sentenced Nathan Hill to life imprisonment after a jury convicted him of, among other things, narcotics conspiracy and continuing criminal enterprise. Mr. Hill has now filed a motion for compassionate release—his fifth—under 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Court denies the motion.

**Background**

The evidence at trial showed that from 1987 to 1995, Mr. Hill ran a highly profitable and highly organized wholesale narcotics distribution in the Chicago area. In December 1995, a grand jury indicted Mr. Hill and twenty co-defendants. He was twenty-one when the drug conspiracy began and twenty-nine when he was indicted. Mr. Hill fled the United States, seeking refuge in Mexico, the Bahamas, and west Africa. He was ultimately extradited from Africa and faced trial in 1999. Mr. Hill has been in custody since January 1998, about twenty-eight and one-half years at this point. Based on information in the presentence report, he is just short of sixty years old.

A jury convicted Mr. Hill of conspiracy to distribute cocaine, engaging in a continuing criminal enterprise, defrauding the United States, and money laundering. The continuing criminal enterprise offense carried a mandatory minimum sentence of twenty years imprisonment and a maximum sentence of life. 21 U.S.C. § 848(a). This offense required a mandatory life sentence, however, if the defendant was (1) a "principal administrator, organizer, or leader of the enterprise" and (2) the violation involved (a) "at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)," i.e., 150 kilograms of powdered cocaine; or (b) resulted in "$10 million in gross receipts during any twelve-month period." *Id.* § 848(b). At the time, a sentencing judge was allowed to make these determinations by a preponderance of the evidence.

Judge Charles Kocoras, the sentencing judge, found that Mr. Hill was the leader of a narcotics enterprise, that he trafficked over 4,000 kilograms of cocaine, and that he had earned $10 million in a twelve-month period. These findings alone required a mandatory minimum life sentence.

Still, Judge Kocoras alternatively calculated the sentence Mr. Hill would have received under the sentencing guidelines for narcotics conspiracy and continuing criminal enterprise. These convictions are generally assessed under the guidelines as narcotics offenses. *See* U.S.S.G. § 2D1.1. But the narcotics-offense guidelines contain a cross reference that requires the offenses to be assessed under the first degree murder guideline if "a victim was killed under circumstances that would constitute murder." *Id.* § 2D1.1(d)(1).

Judge Kocoras found that the government presented evidence at trial showing that Mr. Hill ordered the murders of two individuals and the attempted murder of another

in connection with his narcotics operation. Although the jury was not asked to make findings regarding Mr. Hill's responsibility for the murders, Judge Kocoras stated that there was no question that the evidence was at least substantial that Mr. Hill was involved in "at least two murders, one attempted murder and probably more." Tr. of Proceedings—Sentencing at 135:17–18.

Judge Kocoras thus alternatively calculated Mr. Hill's sentencing guidelines range under the first-degree murder guideline, which mandated a base offense level of 43. *See* U.S.S.G. § 2A1.1. He further concluded that Mr. Hill's leadership of his narcotics enterprise warranted a four-point leadership-role enhancement and that his flight from prosecution justified a two-point enhancement for obstruction of justice. *See id.* §§ 3B1.1(a), 3C1.1. With these enhancements, Mr. Hill's total offense level was 49. At the time, sentencing within the guidelines range was mandatory. The guidelines' sentencing table, which goes no higher than offense level 43, mandated a life sentence for any person at that level, irrespective of the person's criminal history category. Based on this calculation and his findings concerning the continuing criminal enterprise, Judge Kocoras sentenced Mr. Hill to life imprisonment.

Mr. Hill's direct appeal was unsuccessful. *See United States v. Hill*, 252 F.3d 919 (7th Cir. 2001); *Hill v. United States*, 536 U.S. 962 (2002) (mem.). His later postconviction motions under 28 U.S.C. § 2255 were also denied. *See United States v. Hill*, No. 03 C 4196, 2004 WL 2064622 (N.D. Ill. Sept. 13, 2004).

In January 2021, Mr. Hill first moved for compassionate release; the case at that point was reassigned to the undersigned judge. Mr. Hill sought release based on (a) health threats from the COVID-19 pandemic, (b) his rehabilitation, and (c)

3

nonretroactive changes in sentencing law that now prevent sentencing judges from finding facts that increase mandatory minimum sentences. The Court determined that, under controlling Seventh Circuit precedent, Mr. Hill had not established an extraordinary and compelling reason warranting compassionate release.

Mr. Hill subsequently moved for reconsideration, which the Court denied. He then filed a second and third motion for compassionate release; the Court denied both for failing to raise new issues. In 2024, Mr. Hill filed a fourth motion for compassionate release arguing that several factors justified a reduction to time served or, in the alternative, 360 months: a gross sentencing disparity in light of changes in the law, sentencing error, his youth at the time of the offense, harsh conditions caused by the COVID-19 pandemic, medical issues, and rehabilitation. The Court denied the motion, concluding that Mr. Hill had not shown an extraordinary and compelling reason justifying release. Mr. Hill filed a motion to reconsider, and the Court denied the motion.

On September 26, 2025, Mr. Hill filed his fifth motion for compassionate release. On January 14, 2026, the Court denied the motion without prejudice because Mr. Hill had failed to exhaust his administrative remedies within the Bureau of Prisons before filing the motion. On January 15, 2026, Mr. Hill filed a renewed motion for compassionate release and stated that more than thirty days had elapsed since he submitted his request for compassionate release to the Bureau of Prisons and no relief had been granted. The government rested on its previously filed briefs.

Mr. Hill seeks a reduction in his sentence to time served. He argues one new circumstance justifies this reduction: his mother is unable to care for herself and lacks any other available caregiver. Mr. Hill also reiterates that his rehabilitation justifies a

4

sentence reduction.[1]

## Discussion

A federal prisoner may bring a motion for compassionate release after exhausting the administrative remedies provided by the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Mr. Hill has now exhausted these remedies.

The Seventh Circuit has described a two-step process for evaluating a prisoner's motion for compassionate release. First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.*

### A. Extraordinary and compelling reasons

"[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). When determining whether a prisoner has raised an extraordinary and compelling reason, a court should consider all the reasons raised "[i]ndividually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). Even if a reason on its own is "insufficient to meet the threshold," the collective effect of all the

---

[1] Mr. Hill also references a claimed gross sentencing disparity and change in the law based on *Alleyne v. United States*, 570 U.S. 99 (2013), but he does not argue that these are extraordinary and compelling factors justifying a sentence reduction. To the extent Mr. Hill may be relying on these arguments again, the Court previously addressed both points and determined that neither provides an extraordinary and compelling circumstance to justify a sentence reduction. *See United States v. Hill*, No. 95 CR 730, dkt. no. 1539, (N.D. Ill. Feb. 28, 2022); *United States v. Hill*, No. 95 CR 730, 2025 WL 860067, at *1 (N.D. Ill. Mar. 19, 2025).

reasons raised may be extraordinary and compelling. *Id.*

Congress has delegated to the Sentencing Commission the power to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The only statutory limit Congress imposed on this power is that "[r]ehabilitation of the defendant alone" may not be an extraordinary and compelling reason. *Id.*

Mr. Hill argues that his family circumstances warrant a sentence reduction under U.S.S.G. § 1B1.13(b)(3) because his mother is incapacitated and he is the only available caretaker for her. In section 1B1.13(b)(3)(C), the Sentencing Commission stated that extraordinary and compelling reasons exist if the defendant can establish the incapacitation of the defendant's parent and that the defendant would be the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(C).

The government contends that Mr. Hill's argument under section 1B1.13(b)(3)(C) falls short for two reasons. First, the government argues that Mr. Hill provides no medical documentation that his mother cannot carry out daily functions or requires a full-time caretaker. Second, the government argues that Mr. Hill has not established that he is the only available caregiver because he has not shown that his three siblings or other extended family could not take steps to meet his mother's needs.

Mr. Hill submitted medical records that show his mother, Mary, is 92 years old and has multiple chronic, function limiting diagnoses including kidney disease, type two diabetes, hypertension, and osteoporosis. The government does not dispute that Mary has these conditions but instead argues that the records submitted show that she has suffered from the conditions for years. This may be true, but it does not undercut Mr.

6

Hill's argument that his mother can no longer care for herself as the conditions continue to progress.

Mr. Hill submitted several letters from his mother describing her limitations and stating that her other children are unable to care for her. He also submitted letters from two of his siblings, Toby Hill and Sharon Hill, stating that they are unable to care for Mary due to their own immediate families and daily responsibilities. Toby explains that he works full time as an electrician and is the primary caregiver for his special needs son. Sharon explains that she provides care and support for her grandchildren and is pursuing a Ph.D. full-time. Toby and Sharon also explain that their other brother, Willie Hill, has serious issues of his own and is unable to help.

For purposes of Mr. Hill's motion, the Court assumes that Mr. Hill's submissions are sufficient to establish an extraordinary and compelling circumstance based on his family circumstances.

## B.      Section 3553(a) factors

The Court's analysis does not end there, however. Even where an extraordinary and compelling circumstance exists, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];

(5) any pertinent policy statement [in the Sentencing Guidelines];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Consideration of these factors weighs heavily against reducing Mr. Hill's sentence. As to history and characteristics of the defendant, Mr. Hill argues that he grew up amid poverty on Chicago's south side and was exposed to gang violence. He states that he survived a shooting at the age of twenty-four that left him paralyzed for over a year, likely with PTSD. He argues that this type of trauma can impair self-regulation and decision making. But Mr. Hill's leadership of a highly organized wholesale narcotics distribution evinces sophistication—it belies the notion that his actions were based on a lack of self-regulation or inability to make decisions.

Mr. Hill also argues that this was his first and only felony conviction and he has since transformed himself into a mentor, leader, and caregiver. But the proposition that this was his first conviction ignores the fact that he effectively was engaged in a life of crime, continuously, for eight years. The gravity of his offenses, as well as the length of time that he led a large criminal enterprise, undercuts Mr. Hill's argument.

Mr. Hill was convicted of unusually serious crimes. He ran a major criminal enterprise that involved tens of millions of dollars in narcotics distribution. Judge Kocoras found Mr. Hill trafficked 4,000 kilograms of cocaine, a quantity that is *eight times* larger than the amount required to receive the highest base offense level for

narcotics conspiracy. *See* U.S.S.G. § 2D1.1(c)(1). In addition, according to the presentence report, Mr. Hill hid his income and assets to avoid seizure and taxation. The presentence report also stated that Mr. Hill's enterprise recruited minor children to commit drug trafficking offenses, paid witnesses to secure refusal of cooperation with law enforcement, and used violence and threats of violence to collect drug debts and maintain order. He also fled the country to evade prosecution, assumed a new identity, and avoided detection for a significant period until he was found and extradited back to this country to face trial.

Furthermore, Judge Kocoras found that the government presented evidence at trial that Mr. Hill ordered the murders of two men, James Moore and Robert Franklin, in connection with his narcotics operation. Judge Kocoras stated at sentencing that there was no question that the evidence was at least substantial that Mr. Hill was involved in "at least two murders, one attempted murder and probably more." Tr. of Proceedings—Sentencing at 135: 17–18.

Mr. Hill next points out that he has been incarcerated for twenty-eight years, and he argues that this is more than sufficient to reflect the seriousness of his offenses, promote respect for the law, and provide just punishment. But Mr. Hill's criminal conduct was calculated, brazen, and occurred over a lengthy period. In the Court's view, if Mr. Hill were released now, his sentence would not sufficiently reflect the seriousness of his crimes, promote respect for the law, and provide just punishment.

Mr. Hill also contends that his sentence should be reduced to avoid unwarranted sentencing disparities because modern sentencing law would not impose a life sentence and comparable defendants have received sentence reductions. On the first

9

point, the Court previously addressed this argument and determined that Mr. Hill relies only on nonretroactive changes in the sentencing law to support the argument. *Hill*, No. 95 CR 730, dkt. no. 1539, at 4–5. As the Supreme Court recently held, nonretroactive changes to sentencing law alone cannot support a sentence reduction. *Rutherford v. United States*, 146 S. Ct. 1320, 1334 (2026).

On the second point, Mr. Hill has not cited any other case where a court reduced a sentence for the leader of a major criminal enterprise when the court found that his relevant conduct included multiple murders and / or attempted murders. Mr. Hill points to *United States v. Cano*, No. 95 CR 481, 2020 WL 7415833 (S.D. Fla. Dec. 16, 2020). In *Cano,* the defendant was the co-leader of a large narcotics organization, but there was no evidence that the defendant had engaged in violent acts. *Id.* In its decision, the court noted several times that the defendant was a non-violent offender. *Id.* at *6–8. That is not the case for Mr. Hill. As discussed, Judge Kocoras found that there was at least substantial evidence that Mr. Hill was responsible for multiple murders and at least one attempted murder. The presentence report also stated that Mr. Hill used violence and threats of physical force to collect debts, keep discipline among the members of his criminal organization, and maintain secrecy. The Court concludes that Mr. Hill's sentence does not create any unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Finally, Mr. Hill argues that he poses no risk to the public. Although Mr. Hill's rehabilitation efforts are commendable, the Court is not convinced that there is no risk to public safety if Mr. Hill were released. As discussed, in his position as the leader of a large criminal enterprise, he engaged in—and directed others to engage in—significant

10

violence and intimidation. And at age sixty, he is not so old that he would be practically unable to return to criminal activity if released. In the Court's view, the significant nature of Mr. Hill's criminal conduct undermines his argument that he poses no risk to the public.

### Conclusion

For these reasons, the Court denies Mr. Hill's motion for compassionate release [dkt. no. 1631]. The Clerk is directed to mail a copy of this order to: Nathan Hill; No. 10251-045, FCI Terre Haute, P.O. Box 33, Terre Haute, IN 47808.

Date: July 2, 2026

_____
MATTHEW F. KENNELLY
United States District Judge

11